**Joseph OSBORNE, Plaintiff,**

v.

**Katherine S. McEWAN et al., Defendants.**

**Patrick J. O'HARA et al., Plaintiffs,**

v.

**Katherine S. McEWAN et al., Defendants.**

**Civ. A. Nos. 1170–59, 1171–59.**

United States District Court
District of Columbia.

May 10, 1961.

———◆———

Fred C. Sacks, Washington, D. C., for plaintiff Osborne.

Harry C. Lewis, Washington, D. C., for plaintiff O'Hara.

Robert E. Anderson, Washington, D. C., for defendant McEwan.

Bond L. Holford, Washington, D. C., for defendant Osborne.

HOLTZOFF, District Judge.

These are two consolidated actions to recover damages for personal injuries sustained as a result of a collision between two automobiles.

■ A police officer was called as a witness in behalf of the plaintiff in one of the actions and testified on direct examination as to certain damaging admissions made to him by the two drivers involved in the collision. The defendant later called to the stand a person who had interviewed the police officer some time before the trial. This witness was asked how the police officer had summarized to him the accounts of the accident narrated by the two drivers. The Court sustained an objection made by plaintiff's counsel on the ground that the police officer on cross-examination had not been confronted with the alleged statement said to have been made by him to the witness. In making a tender of proof, the defendant's counsel indicated that the answer he expected to elicit would show that the statements made by the police officer to the witness as to what the drivers had told him, were different in important respects from the testimony concerning the same matter given by the police officer on the witness stand at this trial.

The Court regarded this matter of some importance and for that reason has gone into it to some extent, as much as is possible in the exigencies of the progress of a trial. The Court adheres to its ruling sustaining the objection to the evidence.

Wigmore on Evidence, Volume III, Section 1019, in discussing the admissibility of a contradictory statement made by a witness for the purpose of impeachment, states:

"The witness must be *asked in advance*—i. e. on cross-examination and before any other testimony to the Prior Self-Contradiction is offered—whether he made the contradictory statement which it is desired to prove. In this way he receives ample warning, and, if the alleged contradiction is a mere fabrication of the impeaching party, the other has ample time to prepare to disprove it, or to explain it away if it was made." (Emphasis original.)

In Section 1028, Wigmore continues:

"In all but a few jurisdictions the rule is recognized, and is enforced as an inflexible one. In a few jurisdictions its enforcement is left to the trial Court's discretion. In a few others it is not recognized at all."

In Section 1029, Wigmore discusses this matter further:

"If the preliminary question is to be useful as a warning to enable the witness to prepare to disprove the utterance or to explain it away if admitted, it must usually specify some details as to the occasion of the remark."

A more recent work which is recognized as authoritative, McCormick on Evidence, adopts the same doctrine. In Ch. 5, Section 37 it states:

"To satisfy the requirement the cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place and person to whom made."

This doctrine prevails in the Federal courts, for it was recognized and applied by the Supreme Court in Ayers v. Watson, 132 U.S. 394, 404, 10 S.Ct. 116, 118, 33 L.Ed. 378. The Supreme Court there made the following statement:

"The circumstances under which the former statements of a witness in regard to the subject-matter of his testimony, when examined in the principal case can be introduced to contradict or impeach his testimony, are well settled, and are the same whether his testimony in the principal case is given orally in court before the jury, or is taken by deposition afterwards read to them. In all such cases, even where the matter occurs on the spur of the moment in a trial before a jury, and where the objectionable testimony may then come for the first time to the knowledge of the opposite party, it is the rule that, before those former declarations can be used to impeach or contradict the witness, his attention must be called to what may be brought forward for that purpose, and this must be done with great particularity as to time and place and circumstances, so that he can deny it, or make any explanation, intended to reconcile what he formerly said with what he is now testifying."

Only recently this rule was recognized in the Sixth Circuit in Stinson v. Aluminum Co., 141 F.2d 682, 686, where it was stated:

"The testimony of a witness is not to be disregarded on the ground that he has given false testimony as to his statements out of court, unless such specific statements are called to his attention and he is questioned thereon with the required particularity."

While these expressions were dicta insofar as that case was concerned, this Court refers to them as a recognition of the existence of the rule.

It is the prevailing rule, therefore, that the testimony of a witness may not be impeached by a contradictory statement said to have been made by him, unless he was confronted with this statement on cross-examination. The interrogation on cross-examination must identify the specific statement and indicate its contents, the occasion, and the person to whom it is alleged to have been made. In this case, as before stated, the police officer when he was on the witness stand was not confronted with the alleged contradictory statements said

to have been made by him previously to the trial and, therefore, they were inadmissible under the principle that has been discussed. This rule is no mere technicality. It is vital in the interest of fairness and justice and for the purpose of eliciting the truth. It helps to combat the "sporting theory of justice".